AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
**12/11/2024**
CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
**12/11/24**
CENTRAL DISTRICT OF CALIFORNIA
BY: ___sl___ DEPUTY

UNITED STATES OF AMERICA,

v.

CHRISTOPHER ALLEN STULL,

Defendant.

Case No.  5:24-mj-00515

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 20, 2023, in the county of San Bernardino in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) | Distribution of Child Pornography |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/S/
*Complainant's signature*

HSI Special Agent, Jonathan Ruiz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  December 11, 2024

*Judge's signature*

City and state:  Riverside, California

Honorable David T. Bristow
U.S. Magistrate Judge
*Printed name and title*

AUSA: Sonah Lee (951-276-6924)

## I AFFIDAVIT

I, Jonathan Ruiz, being duly sworn, declare and state as follows:

### I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against Christopher Allen STULL ("STULL"), for a violation of Title 18, United States Code, 2252A(a)(2)(A) and (b)(1) (distribution of child pornography)(the "SUBJECT OFFENSE") on or about October 20, 2023.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II.    BACKGROUND OF AFFIANT

3.    I am a Special Agent ("SA") with Homeland Security Investigations and have been so employed since 2007.  I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, which included multiple courses on federal customs, immigration violations, and false document crimes.  From April 2007 to November 2014, I was assigned to the Child Exploitation Investigations Group for the HSI Office of the Special Agent in Charge, Los Angeles,

1

California.  In November 2014, I transferred to the Child
Exploitation Investigations Group for the HSI Office of the
Assistant Special Agent in Charge, Riverside and San Bernardino,
California ("HSI Riverside").

4.    My daily duties as a SA include investigating criminal
violations relating to child exploitation and child pornography,
including violations pertaining to the illegal distribution,
receipt, and possession of child pornography, in violation of 18
U.S.C. §§ 2251, 2252 and 2252A.  During the course of these
investigations, I have participated in the execution of numerous
search warrants and seized evidence of such violations.

5.    Through my training and experience, I have become
familiar with the methods of operation used by people who
sexually exploit children.  I have attended training classes and
seminars concerning computer crimes and the sexual exploitation
of children on the Internet.  My training and experience in
these investigations has given me an understanding of how people
involved with offenses relating to the sexual exploitation of
children use the Internet to further those offenses.

### III. <u>BACKGROND ON APPLICATION A</u>

6.    The investigation, described more fully below,
involves individuals who have engaged in the sexual exploitation
of children through an internet-based, videoconferencing and
chat application ("Application A").[1]  Based on my training,

---

[1] The name of Application A referenced in this affidavit is
known to law enforcement but anonymized here to protect
operational security.  HSI's investigation of individuals who
*(footnote cont'd on next page)*

experience, and review of publicly available information, I know that Application A is a software product that allows users to conduct live video calls and voice calls with other users over the internet.  Application A users can also send instant messages, exchange files and images, send video messages, and conduct multi-person conference calls.  Application A is available for use on personal computers as well as smartphones, tablets, and other electronic devices.  Users can sign up for an account and access Application A directly through Application A's website; alternatively, users can download the application, which allows them to access Application A from computers, tablets, cellular phones, certain televisions, and other electronic devices.

7.    To access Application A, subscribers must create an account.  Application A assigns a subscriber a unique name or ID, and a subscriber can then add a display name to their account. The user can change the display name at any time. The unique name or ID, by contrast, cannot be changed by the user.

8.    Application A records some IP addresses associated with user activity, including the original IP address used for the creation of the account and the IP addresses captured at the time the user logs in to Application A.  Application A may preserve chat communications and media content, including videos

---

engage in the sexual exploitation of children over Application A remains ongoing and the disclosure of the existence of the investigation involving Application A may alert other users to notify others of law enforcement action, flee, and/or destroy evidence.

and images exchanged in chat conversations. Whether content is stored and retained, however, is a user-driven setting—that is, the user can determine whether the content will be retained. Application A does not record, store or retain the content of live video transmissions.

## IV. BACKGROUND ON ONLINE CHILD SEX TRAFFICKING AND EXPLOITATION VIA WEBCAM AND THE INTERNET

9.    HSI is investigating individuals who provide access to pre-produced child sexual abuse material and live-streaming online webcam shows involving the sexual abuse of children to paying customers worldwide. This growing transnational child-sexual-abuse industry includes child sex traffickers in, among other places, the Philippines, who collect viewership fees from vetted customers scattered throughout the world. Paying customers often request that these child sex traffickers provide pre-recorded depictions of minors engaging in sexually explicit conduct or sexually abuse minors in real time during private webcam interactions on a variety of streaming video services and applications, including Application A.

10.    Based on my training, experience, and information conveyed to me by other law enforcement agents involved in the investigation of live-streaming depictions of child sexual abuse, I know that it is common for such traffickers in the Philippines and elsewhere to be communicating with many individuals who are paying for access to such material. I also know that it is common for the paying customers to be communicating with other traffickers—and sometimes many other

traffickers—who are selling access to similar material over the
internet.  These individuals often use a variety of money
service businesses to pay the traffickers or associates of the
traffickers for access to this material, including Western
Union, MoneyGram, PayPal, World Remit, and Remitly.

11.  I also know that the purchasing individuals often find
ways to capture the live-streamed child sexual abuse and
exploitation, either by recording the live shows onto their
computers or taking still photographs (including "screen
captures" or "screen shots") of the abuse, which can also be
stored on the individual's computer or an electronic storage
device.  Such individuals often also save any pre-produced child
sexual abuse material the traffickers provide to their computer
or an electronic device for later viewing or distribution.

12.  HSI has identified an individual operating a child-
sex-trafficking network (CSTN) from the Philippines.  Based on
undercover activity and other investigation, HSI is aware that
this person did, in fact, have access to minors to sexually
abuse on camera and has offered to provide access, through her
Application A account, to visual depictions of one or more
minors engaging in sexually explicit conduct in exchange for
money.

## V.    SUMMARY OF PROBABLE CAUSE

13.  In May 2023, HSI Portland, Maine, assisted United
Kingdom ("UK") law enforcement with the investigation of two
Application A user accounts (identified as "TRAFFICKER ACCOUNT

1" and "TRAFFICKER ACCOUNT 2")[2] suspected of being utilized by a
female sex trafficker of minor children in the Philippines (the
"TRAFFICKER #1").[3]  HSI obtained and executed federal search
warrants on three of TRAFFICKER #1's Application A accounts,
which confirmed that TRAFFICKER #1 used the Application A
platform to offer, and engage in, the live streaming of sexual
abuse of minors to customers online.

14.  A review of TRAFFICKER #1's Application A
communications also led to the identification of Application A
accounts belonging to suspected customers of TRAFFICKER #1, one
of which is an account controlled by Christopher Allen Stull
("STULL"), a resident of Ontario, California.

a.    Those communications between TRAFFICKER #1 and
STULL showed that the two conspired to employ/induce preteen
minors to engage in sexually explicit conduct for the purposes
of transmitting a live visual depiction of that conduct.

b.    The communications contained the details of their
payment arrangements demonstrating that STULL paid specifically
for live "shows" depicting TRAFFICKER #1 sexually abusing minors
as well as for her "commission" when successfully recruiting
other minors to abuse and or adults who would sexually abuse
minors during live "shows."

---

[2] The complete username for each of the Application A
accounts controlled by TRAFFICKER #1 is known to law
enforcement; however, those usernames have been withheld in this
affidavit as the investigation into TRAFFICKER #1's customers is
still ongoing.

[3] The identity of TRAFFICKER #1 is known to law enforcement,
but it has been withheld here as the investigation into
TRAFFICKER #1's customers is still ongoing.

15.    Records obtained from PayPal and Western Union confirmed that STULL sent payments to TRAFFICKER #1 and another individual later identified as TRAFFICKER #2, some of which were made during dates and times that are consistent with Application A communications where the two discussed payment arrangements in exchange for the sexual abuse of minors.

16.    In October 2024, I obtained a federal search warrant for STULL's Application A account, as well as two Discord[4] accounts belonging to STULL that were each reported to NCMEC for uploading child pornography to Discord's platform.

    a.    The information obtained from Application A showed that STULL used Application A to engage in sexually explicit conversations with minors and solicit others for sexually explicit material depicting minors.

    b.    The information provided by Discord also showed that STULL used the two Discord accounts to engage in sexually explicit conversations with minors, solicit other users for sexually explicit material depicting minors, and to trade child pornography with other users.

17.    In particular, on October 20, 2024, STULL distributed video files depicting child pornography to another Discord user.

---

[4] Discord is a communications application that is also available online that allows users to communicate privately or in groups.  Discord allows its users to send media files and engage in audio and video calls as well.

## VI.  <u>STATEMENT OF PROBABLE CAUSE</u>

18.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A.  <u>Identification of TRAFFICKER #1's Sex Trafficking Network</u>

19.  In May 2023, HSI received a request from UK law enforcement for investigative assistance into the investigation of an individual identified as TRAFFICKER #1 who was suspected of utilizing two Application A accounts, TRAFFICKER ACCOUNT 1 and TRAFFICKER ACCOUNT 2, to facilitate her sex trafficking of minor children in the Philippines.

20.  On or about May 11, 2023, an undercover HSI agent ("UCA") engaged in a conversation on Application A with the TRAFFICKER ACCOUNT 1, an account that the UCA confirmed as belonging to TRAFFICKER #1.  During undercover online communications, TRAFFICKER #1 offered to sell live sexually explicit shows involving children (ages 5, 10, and 14) to UCA in exchange for cash remittances.  According to TRAFFICKER #1, the underage children are all related to her.

21.  On or about May 11, 2023, the UCA located TRAFFICKER ACCOUNT 2, an account that the UCA confirmed as also belonging to TRAFFICKER #1.  During undercover online communications with TRAFFICKER ACCOUNT 2, TRAFFICKER #1 offered to sell live sexually explicit shows involving female children (aged 13 and 16) to UCA in exchange for cash remittances.

22.   On or around August 3, 2023, the UCA received a message on Application A from the TRAFFICKER ACCOUNT 3 who identified herself as TRAFFICKER #1 and informed the UCA that her TRAFFICKER ACCOUNT 1 was locked, and she no longer had access to TRAFFICKER ACCOUNT 1.   TRAFFICKER #1 apologized for not yet providing a show for the UCA and promised to provide a show involving underage girls the next time she visits her cousin.

23.   In January 2024, HSI assisted the Philippine National Bureau of Investigation in an Anti-Trafficking and Rescue operation that resulted in the arrest of TRAFFICKER #1 and TRAFFICKER #2 for violations of Anti-Human Trafficking in Person Act of the Philippines and other pertinent laws.   Additionally, two minor female victims were rescued during this operation.

B.   **STULL APPLICATION A ACCOUNT Identified as a Customer of TRAFFICKER #1**

24.   In December 2023, HSI obtained and executed a federal search warrant on Microsoft in the District of Maryland in Case No. 2:23-mj-370-KFW for TRAFFICKER #1's three Application A accounts (the TRAFFICKER ACCOUNT 1, the TRAFFICKER ACCOUNT 2, and the TRAFFICKER ACCOUNT 3).   In response, HSI obtained data from Microsoft including call logs,[5] written communications, and

---

[5] I know from training and experience that calls occurring via Application A are not recorded by Application A and therefore Application A cannot provide the content of such calls.   I also know from training and experience that Application A allows its users to enable and disable the audio and video features independently while a call is in progress; however, the information provided by Application A detailed the
*(footnote cont'd on next page)*

media messages that were exchanged between TRAFFICKER #1 and numerous other Application A users.  In reviewing the communications, HSI found that TRAFFICKER #1 communicated (using TRAFFICKER ACCOUNT 1 and 2) with a particular Application A account ending in 288e (the "STULL APPLICATION A ACCOUNT").

**C.**  **STULL APPLICATION A ACCOUNT Arranged to Buy Livestream Videos Depicting Sex Abuse of a Minor**

25.  HSI Maryland forwarded me conversations between STULL APPLICATION A ACCOUNT and TRAFFICKER ACCOUNT 1 and 2, obtained as a result of a federal search warrant in the District of Maryland in Case No. 2:23-mj-370-KFW, which I have reviewed.

1.  Communications Between the TRAFFICKER ACCOUNT 1 and STULL APPLICATION A ACCOUNT in February and March 2023

26.  I have reviewed the communications between TRAFFICKER #1 using TRAFFICKER ACCOUNT 1 and STULL APPLICATION A ACCOUNT obtained pursuant to the search warrant executed on the TRAFFICKER ACCOUNT 1.  The following is a summary of the communications which occurred between February 20, 2023, and March 29, 2023 on TRAFFICKER ACCOUNT 1 and STULL APPLICATION A ACCOUNT:

a.  The majority of the messages involved the negotiating and arranging of webcam shows, appearing to have occurred via Application A, depicting TRAFFICKER #1 sexually abusing Minor Victim 1.  In reviewing the messages, these

---

date and time that a call began and ended and not whether the call utilized both audio and video features, just audio-only features, just video-only features, or any combination thereof that was available during the call.

sexually abusive webcam shows appeared to have occurred both before and after Minor Victim 1's 5th birthday.

b.     Both TRAFFICKER ACCOUNT 1[6] and STULL APPLICATION A ACCOUNT admitted that they will not show their faces on camera out of fear of getting caught by police.  On February 20, 2023, STULL APPLICATION A ACCOUNT communicated to TRAFFICKER ACCOUNT 1 that he is "Scared if the police get me Doing sex to a child."

c.     The information provided by Application A also detailed when calls were initiated and terminated between TRAFFICKER ACCOUNT 1 and STULL APPLICATION A ACCOUNT.  I found that during the time in which some of these calls were taking place, STULL APPLICATION A ACCOUNT sent messages to TRAFFICKER ACCOUNT 1 directing her how to sexually abuse Minor Victim 1 during the call.  The following is an example of such conversation:

d.     On February 20, 2023, TRAFFICKER ACCOUNT 1 communicated that she was with Minor Victim 1 who was asleep. STULL APPLICATION A ACCOUNT messaged TRAFFICKER #1 how he wanted to "cumm" before he fell asleep and that he wanted to see Minor Victim 1.  TRAFFICKER #1 complied, sending the following message to STULL APPLICATION A ACCOUNT "Ok but can u mute call? I will just show her she is sleeping."  STULL APPLICATION A ACCOUNT agreed and messaged back "Ok i can mute."  STULL APPLICATION A ACCOUNT then initiated a call on Application A and while it was

---

[6] TRAFFICKER #1 using TRAFFICKER ACCOUNT 1 will be referenced interchangeably as TRAFFICKER #1 and TRAFFICKER ACCOUNT 1 in this section.

active, sent the following series of messages directing

TRAFFICKER #1 how to abuse the sleeping Minor Victim 1:

    STULL APPLICATION A ACCOUNT: Open. Her

    STULL APPLICATION A ACCOUNT: user your finger

    STULL APPLICATION A ACCOUNT: Rub her

    STULL APPLICATION A ACCOUNT: Open it

    STULL APPLICATION A ACCOUNT: Put your finger inside

The call ended and TRAFFICKER #1 sent the following message to STULL APPLICATION A ACCOUNT "She is a virgin I'm afraid I put fingers inside."

    e.   In order to receive payment from STULL APPLICATION A ACCOUNT, TRAFFICKER #1 sent messages to STULL APPLICATION A ACCOUNT that contained her full name and the account information for two of her PayPal accounts.

    f.   In return, STULL APPLICATION A ACCOUNT introduced himself as "Chris" and over the course of their communications, STULL APPLICATION A ACCOUNT sent TRAFFICKER #1 screenshots of PayPal receipts demonstrating three different payments to TRAFFICKER #1's PayPal account(s).[7]

    g.   I believe that the transactions were payments for webcam shows depicting sexual abuse of minors as well as for future webcam shows depicting sexual abuse of minors because TRAFFICKER #1 sent messages to STULL APPLICATION A ACCOUNT on numerous occasions that he has to pay for the sex shows

---

[7] Three screenshots were sent showing payments occurring on March 6, 2023, March 11, 2023, and March 18, 2023.

depicting Minor Victim 1 and other minors, but that shows depicting just TRAFFICKER #1 are "free."

27.   STULL APPLICATION A ACCOUNT also offered TRAFFICKER #1 money to pay for her grandmother's medicine if TRAFFICKER #1 could get additional children to sexually abuse on webcam. STULL APPLICATION A ACCOUNT sent messages to TRAFFICKER #1 asking to find children as young as 6 years old.  The communications suggest that TRAFFICKER #1 obtained additional children to abuse, one of whom she referred to in messages as her minor son; and others that she referred to as her cousin's children.

28.   Additionally, STULL APPLICATION A ACCOUNT sent messages to TRAFFICKER #1 stating that he planned to travel to the Philippines in October 2023 to meet with her and to take Minor Victim 1's virginity.[8]  The two also communicated about their plan to get Minor Victim 1 drunk so that she is relaxed during the abuse.

29.   On multiple occasions during the messaging conversation, STULL APPLICATION A ACCOUNT exhibited his sexual interest in Minor Victim 1 and other minors, sending messages to TRAFFICKER #1 where he refers to Minor Victim 1 as his future wife, and how he wants "to put a baby inside her."

---

[8] I conducted a search within US Customs and Border Protection for international travel records relating to STULL's travel in or about October 2023. I found no records indicating travel around that time. I did find that on June 5, 2024, STULL departed Los Angeles International Airport for Manila International Airport.

30.  Additionally, STULL's APPLICATION A ACCOUNT sent a message to TRAFFICKER #1 declaring "I am pedo."[9]

31.  Towards the end of their messaging communications, STULL APPLICATION A ACCOUNT disclosed to TRAFFICKER #1 that he found another "mom" with a 10-year-old girl who charges half of what TRAFFICKER #1 charges him for webcam shows.  This appeared to upset TRAFFICKER #1 and the communications between them became less frequent and ended days later.

> 2.  Communications Between TRAFFICKER ACCOUNT 2[10] and STULL'S APPLICATION A ACCOUNT in March 2023

32.  I reviewed the communications provided by Application A pursuant to the search warrant executed on the TRAFFICKER ACCOUNT 2; the following is a summary of those written communications which occurred on March 21, 2023 between TRAFFICKER ACCOUNT 2 and STULL APPLICATION A ACCOUNT:

a.  During this conversation, TRAFFICKER #1 and STULL APPLICATION A ACCOUNT sent messages back and forth negotiating the price for a live show involving TRAFFICKER #1 and two minors (a 9-year-old female and a 13-year-old female).

b.  STULL APPLICATION A ACCOUNT sent a message to TRAFFICKER #1 offering "50 usd for cam fucking" involving her and the two children.

c.  STULL APPLICATION A ACCOUNT sent TRAFFICKER #1 a message "Show me the 13 pussy."  However, both were reluctant to

---

[9] I know from training and experience that "pedo" is short for Pedophile, a person who has a sexual interest in children.

[10] In this section, TRAFFICKER #1 using TRAFFICKER ACCOUNT 2 will be referenced interchangeably between TRAFFICKER #1 and TRAFFICKER ACCOUNT 2.

initiate the "agreement." STULL APPLICATION A ACCOUNT wanted to
see the child first before paying, and TRAFFICKER #1 wanted
payment before showing the children. The two continued to argue
back and forth and accused each other of attempting to "scam"
the other person.

      d.    To prove to TRAFFICKER #1 that the user of STULL
APPLICATION A ACCOUNT is "real," STULL APPLICATION A ACCOUNT
sent a picture titled "FC92FB22-7EC6-4604-97CA-26F48D40E7EB.jpg"
that he represented was of himself.

      e.    The picture depicts a white male adult wearing a
white t-shirt covered in various stains. The male is sitting on
what appears to be a couch. The male's face is not visible in
the image. The male adult has his bottoms pulled down and is
seen holding his penis in his hand. A portion of a large tattoo
located on the man's bicep and upper forearm is visible in the
photo.[11]

      f.    The conversation between the two eventually ended
in a stalemate without a call occurring because STULL
APPLICATION A ACCOUNT would not make a payment first and the
TRAFFICKER #1 would not show the children without payment.

    **D.**    **STULL Identified as User of STULL APPLICATION A
ACCOUNT**

    33.  In February 2024, HSI SA Anthony Castellanos sent an
administrative subpoena to Microsoft requesting subscriber

---

    [11] There was no metadata in the photo provided by
Application A to determine if the photo was taken with a forward
facing, or rear facing camera. Therefore, it is unknown
currently if the tattoo is on the male's right or left arm.

information for several Application A accounts, including STULL
APPLICATION A ACCOUNT, which were used to communicate with
TRAFFICKER #1's various Application A accounts.

34.  Microsoft responded to the subpoena and provided, in
part, the following registration information relating to STULL
APPLICATION A ACCOUNT:

1.  Sign in Name: allenchristopher32@aol.com (the
"STULL EMAIL ACCOUNT 1")

2.  First Name: chris

3.  Last name: allen

4.  Country: United States

5.  Creation Date and Time: 2/18/2023 3:15:02 PM

6.  Application A also reported that the account was
created using the IP address 172.113.131.175 (the "IP ADDRESS
1").

35.  Using an online IP address search tool, such as
Maxmind.com, HSI determined that the IP ADDRESS 1 belonged to
Charter Communications (doing business as Spectrum) and served
the area in/around Ontario, California.

**E.    CyberTips Suggest STULL has been Involved in Child
Pornography For Several Years**

36.  In or about August 2024, the investigation into STULL
APPLICATION A ACCOUNT was referred to HSI Riverside, and then
subsequently assigned to me.  I spoke with the UCA and other
investigators involved in this case and I reviewed investigative
materials, including but not limited to, copies of Application A
communications between STULL APPLICATION A ACCOUNT and

16

TRAFFICKER #1, subpoena results from APPLICATION A, and HSI
investigative reports.

37.  On or about August 26, 2024, I conducted a search for
CyberTips within databases maintained by NCMEC for the IP
ADDRESS 1 and the STULL EMAIL ACCOUNT 1--both of which were used
to create STULL APPLICATION A ACCOUNT.  The search yielded
multiple CyberTips, four of which are summarized below.

> 1.  <u>CyberTip (45979404)- A Facebook Account Appearing
> to Belong to STULL Received Child Pornography
> from Another Facebook User Who is a Minor</u>

38.  I reviewed CyberTip 45979404 and learned that on
January 13, 2019, at 23:14:21 (UTC), a Facebook account
registered with the name "Christopher Stull," with a date of
birth XX/XX/1966,[12] and email address of
"christopher_stull@yahoo.com" (the "STULL EMAIL ACCOUNT 2" and
together with STULL EMAIL ACCOUNT 1, the "STULL EMAIL
ACCOUNTS"), received suspected child pornography from another
Facebook user account registered to a 16-year-old minor female
in the Philippines.

39.  Facebook reported that the STULL EMAIL ACCOUNT 2 was
verified to the Facebook account registered to "Christopher
Stull."

40.  Facebook did not identify the title of the "suspected
child pornography" file that was sent, nor did Facebook provide
a copy of the suspected child pornography file.  Facebook did

---

[12] The full date of birth was displayed but it has been
withheld here for privacy reasons.

17

provide a non-sexual photo appearing to depict a Filipino minor female which I have reviewed.  The photo depicts a clothed Asian female with a youthful face, consistent with her being under the age of 18 years old, standing outdoors in an area that is consistent looking with the Philippines.

  a. Additionally, Facebook provided a single login record that NCMEC used to determine that the minor logged into her account from an ISP located in the Philippines.

  2. <u>CyberTip (177018719) – PayPal Reports TRAFFICKER #1's PayPal Account is Being Used to Sell CSAM and Identifies STULL's PayPal Account as a "Buyer"</u>

 41. I reviewed CyberTip 177018719 and learned that on October 26, 2023, PayPal reported to NCMEC that:

> *PayPal detected 349 personal payments ("p2p") suspected to be OCSE/CSAM/CSEM[13] related sent from 89 buyers accounts registered in countries all over the world to 74 Philippines registered PayPal accounts. The suspicious activity detected goes from April 14th, 2022, to October 19th, 2023.  A list with the information on the suspected Buyers and Sellers has been attached to the report.*

 42. The registration information provided by PayPal showed that the suspect's PayPal account was registered with the same email address and name that TRAFFICKER #1 had provided to STULL APPLICATION A ACCOUNT for payment in exchange for sexually abusing Minor Victim 1 on webcam.

---

[13] The acronym "OCSE" refers to Online Child Sexual Exploitation; the acronym "CSAM" refers to Child Sexual Abuse Material; and the acronym "CSEM" refers to Child Sexual Exploitation Material.

43.  I reviewed the attached file that PayPal provided to NCMEC, which contained PayPal account information for suspected "Buyers and Sellers."

a.  Many of the "Seller" accounts identified by PayPal appear to belong to TRAFFICKER #1; two of which are the same PayPal accounts that TRAFFICKER #1 provided to STULL APPLICATION A ACCOUNT during their Application A conversation when making arrangements for payment in exchange for a show depicting TRAFFICKER #1 sexually abusing Minor Victim 1 on webcam.

b.  One of the accounts that PayPal identified as an "OCSE buyer" was registered with the name "Chris Stull," the STULL EMAIL ACCOUNT 1, and with the phone number xxx-xxx-9053 (the "9053 PHONE NUMBER")(the "STULL PAYPAL ACCOUNT 1").

c.  PayPal also reported that the STULL PAYPAL ACCOUNT 1 was registered to the address xxx E. Elm Street, Ontario, California 91761 (the "STULL RESIDENCE").

3.  <u>CyberTip (189894753) - STULL DISCORD ACCOUNT 1 Uploaded Apparent Child Pornography to DISCORD</u>

44.  I reviewed CyberTip 189894753 and learned that on February 16, 2024, at 04:15:41 (UTC), the Discord user account "pdoguy" ("STULL DISCORD ACCOUNT 1") uploaded a file titled "VID-20240206-WA0082.mov," to Discord's server that was made publicly available.

45.  Discord provided subscriber information for STULL DISCORD ACCOUNT 1 which showed that it was registered with STULL EMAIL ACCOUNT 1 and the 9053 PHONE NUMBER.  Discord identified

19

the STULL EMAIL ACCOUNT 1 and the 9053 PHONE NUMBER as having been verified[14] by the user.

46. Discord provided a single login record showing that STULL DISCORD ACCOUNT 1 was logged into on March 19, 2024, at 00:49:14 (UTC), from the IP address 76.174.228.28 (the "IP ADDRESS 2"). I conducted a search of the IP address within Maxmind.com and learned that the IP ADDRESS 2 belonged to Charter Communications (doing business as Spectrum) and served the area in/around Ontario, California.

47. Discord reported that personnel at Discord reviewed the file, identifying it as "apparent child pornography."

    a. Discord provided a copy of the file titled "VID-20240206-WA0082.mov" which I have reviewed.[15] The file is a video that is approximately 7 seconds in length and depicts a female child showing her vagina to the camera. The child appears to be under the age of 18 years old as she has a very youthful face, lacks breast development, and lacks any visible pubic hair. The child is lying on her back on what appears to be a bed. The child is wearing a blue colored top and is nude from the waist down. The child appears to be holding and is

---

[14] "Verified" is when an account holder receives and responds to Discord's verification message that is sent to the email address or phone number that the user registered to their Discord account.

[15] The United States is providing a description of this image to provide the magistrate judge with the context of the cybertip but is not submitting this image for the magistrate judge's review and determination that it constitutes child pornography at this time, but did submit this image for the then-duty magistrate judge's independent review earlier for the search warrant application filed at Case No. 5:24-MJ-419 (filed under seal).

initially moving the camera to show her face and abdomen.  The
child's left leg is raised up into the air and she then moves
the camera to show her vagina; she does not appear to have pubic
hair.

> 4.    CyberTip (176616827) - STULL DISCORD ACCOUNT 2
>        Uploaded Child Pornography to DISCORD

48.    I reviewed CyberTip 176616827 and learned that on
October 20, 2023, at 20:26:10 (UTC), the Discord user account
"cman8358" (the "STULL DISCORD ACCOUNT 2") uploaded a file
titled "1697819626989.jpg," to Discord's server that was made
publicly available.

49.    Discord provided subscriber information for STULL
DISCORD ACCOUNT 2 which showed that it was registered with the
STULL EMAIL ACCOUNT 2 and that the email address was verified by
the user.

50.    Discord provided a single login record showing that on
October 20, 2023, at 20:22:34 (UTC), STULL DISCORD ACCOUNT 2 was
logged into from IP ADDRESS 1.

51.    Discord reported that personnel at Discord reviewed
the file identifying it as "apparent child pornography."

       a.    Discord provided a copy of the file titled
"1697819626989.jpg" which I have reviewed.[16]  The file titled is

---

[16] This file was subsequently identified by NCMEC as
depicting an identified child victim.

The United States is providing a description of this image
to provide the magistrate judge with the context of the cybertip
but is not submitting this image for the magistrate judge's
review and determination that it constitutes child pornography
at this time, but did submit this image for then-duty magistrate
*(footnote cont'd on next page)*

an image depicting a nude female, appearing to be under the age
of 18 years old, laying on her back with her legs spread apart
exposing her vagina and anus to the camera.  I am unable to
determine if the child's breasts have begun budding because she
is laying on her back, however, the child has a youthful looking
face and does not appear to have pubic hair on her genitals.
The child appears to be lying with her back on the floor and her
legs lifted into the air and spread apart.  The child has both
of her hands bent behind her which are being used to steady
herself on the ground.  The camera is positioned above her,
looking down at her, and is focused on her face and nude torso
and genitals.

### F.   STULL, a Resident of Ontario, California, Travels to the Philippines

52.   I conducted a search using the STULL RESIDENCE within
Accurint, an online research tool that hosts a vast collection
of public and proprietary records such as consumer and credit
bureau data, motor vehicle data, utility, real estate, and other
business data.

53.   The results of the search showed that Christopher
Allen STULL ("STULL") with a date of birth XX/XX/1966, and
social security number XX-XX-XXXX resides at the STULL
RESIDENCE, along with his adult daughter K.S. and his mother
A.K.

---

judge's independent review earlier for the search warrant
application filed at Case No. 5:24-MJ-419 (filed under seal).

54.  HSI Intel Research Specialist ("IRS") Jessica Howard also provided me with information about STULL which included, and was not limited to, a copy of STULL's California State issued driver's license (with the address listed as STULL RESIDENCE), and an application STULL filed with Citizenship and Immigration Services ("CIS") petitioning for a visa for his spouse who is a Filipino national identified as ADM (born in 1999)("ADM").

55.  I reviewed STULL's electronic CIS application petitioning for his Filipino spouse ADM which was dated September 9, 2023, and contained supporting documents such as a photo of their Philippine marriage certificate; a photo of a signed affidavit from a witness to the ceremony claiming to have taken place at the Mayor's office in San Sebastian, Philippines; as well as photos depicting ADM and STULL (the photo of STULL matched the photo depicted on STULL's California driver's license.)  Also submitted with the electronic application were photos that depicted pages one through five of the CIS application.  These pages were filled out by hand, presumably by STULL, as the "Preparer's Signature" captured on the fifth page of the document appears to be "Christopher Stull."[17]  The

_____

[17] One of the photos depicting page 4 of the application, titled "IMG_1553.png," is of particular importance.  As discussed in more detail later in this affidavit, a federal search warrant executed on STULL DISCORD ACCOUNT 2 showed that STULL mistakenly sent an image, titled "IMG_1553.jpg" that is visually identical to "IMG_1553.png," to another Discord user that he was trading child pornography with.  I know from training and experience that Apple products, like the iPhone, is capable of capturing photos in more than one file type, including .jpg. However, ".png" is a file type Apple uses to identify images created from screen captures.

information contained in the photos of the handwritten application appears to be consistent with the information contained on the electronic copy.

56.  IRS Howard also obtained international travel records for STULL which shows that STULL has traveled to the Philippines on more than six occasions between May 31, 2018, and July 7, 2024.

G.    **Financial Transactions between STULL and TRAFFICKER #1 and #2**

1.    STULL Sent PayPal Payments to TRAFFICKER #1

57.  In September 2024, I sent an administrative subpoena to PayPal requesting account information for PayPal accounts registered with information associated with STULL.  The information included, but was not limited to, STULL's full name, social security number, email addresses (including the STULL EMAIL ACCOUNTS) and phone numbers including the 9053 PHONE NUMBER.

a.    PayPal identified six PayPal accounts belonging to STULL that were created between 2013 and 2023.  The information provided by PayPal included registration information and when applicable, transactions records.

58.  Three of the PayPal accounts had no transaction records.  The fourth PayPal account had very limited transactions.  The fifth and sixth PayPal accounts had multiple transactions with individuals located in the Philippines.

a.    I reviewed the records and found that STULL used two of his PayPal accounts to send money to PayPal accounts

registered to TRAFFICKER #1.  The dates of these transactions are consistent with conversations occurring between TRAFFICKER #1 and STULL - via STULL APPLICATION A ACCOUNT- where payment arrangements are made in exchange for TRAFFICKER #1 sexually abusing her daughter ("Minor Victim 1"), a female child that according to TRAFFICKER #1's communications to STULL, was 4 years old when STULL first purchased "shows" depicting her sexual abuse.[18]

    2.   STULL Sent Western Union Payments to TRAFFICKER #1 and #2

59.  I also sent an administrative subpoena to Western Union requesting records, including transactions, associated with STULL.  The information I provided included, but was not limited to, STULL's full name, the STULL RESIDENCE, email addresses (including the STULL EMAIL ACCOUNTS, and christopherastull@gmail.com) and phone numbers including the 9053 PHONE NUMBER.

    a.   Western Union identified approximately 60 transactions between February 22, 2018, and July 6, 2023.  Each of the transactions appeared to involve STULL sending money to various individuals located in the Philippines who have names indicative of being female, none of which appear to be ADM who STULL claims to be married to.

---

[18] During the time period in which STULL and TRAFFICKER #1 communicated on APPLICATION A, the two engaged in discussions about Minor Victim's #1's birthday in February 2023, when TRAFFICKER #1 represented that she would be turning 5 years old. STULL purchased "shows" depicting Minor Victim #1 before and after her 5th birthday.

b.    I found that on February 23, 2023, STULL sent TRAFFICKER #2 one transaction totaling $25.00(US).

c.    I found that on February 24, 2023, STULL sent two transactions to TRAFFICKER #1 totaling $114.50(US).  The dates of these two transactions to TRAFFICKER #1 are consistent with conversations occurring between TRAFFICKER #1 and STULL – via APPLICATION A - where payment arrangements are made in exchange for TRAFFICKER #1 sexually abusing Minor Victim 1 or other minors.

d.    I reviewed the information Western Union gathered from STULL for the three transactions to TRAFFICKER #1 and TRAFFICKER #2 and learned that for each of them, STULL provided the 9053 PHONE NUMBER, the STULL EMAIL ACCOUNT 1, and the STULL RESIDENCE.  Additionally, all three transactions were initiated by STULL online using the IP ADDRESS 1.

e.    I found one more transaction to TRAFFICKER #1 on July 1, 2023, totaling $30 (USD).  Similarly, I reviewed the information Western Union gathered from STULL for this transaction and learned STULL provided the 9053 PHONE NUMBER, the STULL EMAIL ACCOUNT 2, and the STULL RESIDENCE.  Additionally, this transaction was also initiated by STULL online using the IP ADDRESS 1.

**H.    Federal Search Warrant on STULL APPLICATION A Account**

60.    In October 2024, I obtained a federal search warrant for STULL APPLICATION A ACCOUNT in Case No. 5:24-mj-00418. In response to the search warrant, Application A provided, among other things, approximately 14 messaging conversations that

STULL participated in with other APPLICATION A users, including with TRAFFICKER #1.

61.   A copy of the communications between STULL and TRAFFICKER ACCOUNT 1 was not provided in response to the search warrant but the conversation with TRAFFICKER ACCOUNT 2 was provided.  Additionally, there was a conversation provided between STULL and what appears to be the APPLICATION A account TRAFFICKER #1 utilized before she used the TRAFFICKER #1 ACCOUNT.  The bulk of communications between STULL and TRAFFICKER #1, on this new account, occurred on February 18, 2023, and February 19, 2023.[19]

     1.   February 18-19, 2023, Agreement and Transaction

62.   I read the communications and found that TRAFFICKER #1 and STULL arranged for a "30-minute sex show" with Minor Victim 1.  In communications leading up to the "show," STULL agreed to provide partial payment for the "show," and the balance after the "show."

     a.   However, before any payment was to be made, STULL wanted proof that Minor Victim 1 was "real" and requested a "preview" call of Minor Victim 1 to demonstrate that.

     b.   Records show that on February 18, 2023, at 22:38:25 (UTC), TRAFFICKER #1 and STULL engaged in a call that lasted approximately 1 minute and 30 seconds which I believe to be the "preview" call.

---

[19] On January 7, 2024, STULL sent two messages which read "Hi" and "hi, where is [Minor Victim 1] na."  There was no response to these messages.

c.    Following the termination of that call TRAFFICKER #1 sent STULL a message stating "Call after you send and we will start playing on cam."

d.    Approximately four minutes after that message, at 22:44:37 (UTC), STULL sent TRAFFICKER #1 an image of a screenshot depicting a PayPal payment to TRAFFICKER #1 in the amount of 1582.61 (PHP).[20]

e.    After STULL sent the image, he sent the following two messages "Ok i sent pre apyment… No lets sex cam with your daughter."

f.    The two continued to message back and forth, at times discussing how TRAFFICKER #1 will show Minor Victim 1's "pussy" on cam.

g.    At approximately February 18, 2023, 22:49:22 (UTC), records show that a call was initiated and approximately 4 minutes later at 23:03:50 (UTC), the call was terminated.

h.    Following the call, the two resume messaging each other which include discussions about the balance STULL owed. At approximately 23:19:03 (UTC), STULL sent TRAFFICKER #1 an image of a screenshot depicting a PayPal payment to TRAFFICKER #1 in the amount of 3,692.77 (PHP).[21]

2.    STULL Communicated with Other Minors Online

63.    Other communications provided by APPLICATION A showed that STULL engaged in sexual communications with other

---

[20] Records obtained from PayPal, and mentioned previously in this affidavit, corroborate this payment to TRAFFICKER #1.

[21] Records obtained from PayPal, and mentioned previously in this affidavit, corroborate this payment to TRAFFICKER #1.

APPLICATION A users, some of which represented themselves to be minors.

64.  On March 24, 2023, STULL engaged in a sexual conversation with an unidentified 15-year-old Philippine minor (referred to as "JANE DOE 1").

   a.  During that conversation STULL agreed to pay $15 for a "show" depicting JANE DOE 1 and her friend for $15.  STULL offered to pay JANE DOE 1 more money if JANE DOE 1 could get a "10yo girl naked on cam with us."

   b.  Before the show, STULL wanted proof of her age and asked for a photo of her vagina.  On March 24, 2023, JANE DOE 1 sent STULL a photo titled "processed-1837683b-abc1-45b1-baa0-0d8d2174b2ae_4HZXGist.jpeg" that depicts a close up of a vagina with pubic hair.

   c.  STULL subsequently sent two screenshots appearing to depict the same PayPal payment he made to JANE DOE 1 in the amount of $260.22 (PHP).[22]  According to the communications, this payment was half of the agreed amount, the other half to be paid after the "show."

65.  Although records indicate that numerous short "calls" were made and or attempted, the communications between the two suggest that a "show" with JANE DOE 1 did not actually occur.  JANE DOE 1 expressed frustration with her internet connection and STULL expressed feeling that he was being scammed by JANE DOE 1.  JANE DOE 1 eventually sent messages saying that she

---

[22] Records obtained from PayPal, and mentioned previously in this affidavit, corroborate this payment to TRAFFICKER #1.

would refund STULL's money.  STULL, who appeared to be angry
with JANE DOE 1, sent a message telling her that he would find
another "15 or under" and to not refund his money since he saved
the picture of her "pussy."

**I.    STULL Used STULL DISCORD ACCOUNT 1 and 2 to Upload
        Child Pornography from Internet Assigned to the STULL
        RESIDENCE**

66.  On or about August 26, 2024, I sent an administrative
subpoena to Verizon Wireless requesting subscriber information
for the 9053 PHONE NUMBER.

    a.  Verizon Wireless reported that the 9053 PHONE
NUMBER is registered to "Christopher Stull" at the STULL
RESIDENCE since May 25, 2019.

    b.  Verizon Wireless also reported that STULL's
Verizon Wireless account is registered with the STULL EMAIL
ACCOUNT 2 and that service for the 9053 PHONE NUMBER is assigned
to an Apple iPhone 14.

67.  On or about September 11, 2024, I sent an
administrative subpoena to Charter Communications (doing
business as Spectrum) requesting subscriber information for the
IP ADDRESS 1 for the date and time that it was used to login to
the STULL DISCORD ACCOUNT 2.

    a.  Charter Communications reported that from January
3, 2023, at 8:33 PM (UTC), until December 2, 2023, at 7:01 AM
(UTC), the IP ADDRESS 1 was assigned to the customer A.K.
(STULL's mother).

    b.  Charter Communications reported that the service
address for the account was the STULL RESIDENCE.

      c.   Charter Communications also reported that the STULL RESIDENCE was most recently assigned the IP address 76.174.228.28 (the "IP ADDRESS 2") from December 1, 2023, at 8:01:56 AM until September 14, 2024, at 8:45:01 PM (UTC)– the IP address Discord reported as being used to access STULL DISCORD ACCOUNT 1.

**J.**   **Federal Search Warrant Executed on STULL DISCORD ACCOUNT 1 and 2**

68.  In October 2024, I obtained a federal search warrant for records for STULL DISCORD ACCOUNT 1 and STULL DISCORD ACCOUNT 2 in Case No. 5:24-mj-00419.  In response, Discord provided, among other things, login records, communications, and media files STULL sent during his communications.

1.   STULL Communicates with, and Admits to Sexual Interest in, Minors

69.  I reviewed the conversations Discord provided for both accounts.  There were approximately 72 conversations in STULL DISCORD ACCOUNT 1 and approximately 8 conversations in STULL DISCORDS ACCOUNT 2.  While reviewing the conversations I learned the following:

      a.   Many of the conversation were sexual in nature and were with Discord users representing that they were minors, some of which identified themselves as being as young as 10 years old.

      b.   STULL often solicited the minor(s) for images of their genitalia in exchange for money or for going on camera live with him.

c.    STULL sent images and videos of child sexual abuse material to other users.  I subsequently submitted these files STULL sent to NCMEC and learned that some of them depict the sexual abuse of identified minors.

d.    On multiple occasions, STULL disclosed that he is sexually interested in prepubescent minors and has sexual material depicting children under 10 years old.

e.    Most of the media files sent by STULL are videos depicting minors engaging in masturbation by themselves or are being sexually abuse by adults.  There are some photos believed to have been taken inside the STULL RESIDENCE that depict food on a kitchen table, as well as photos of what is believed to be STULL's penis.

f.    During some of the conversations, STULL sent photos of his penis to the minor while requesting photos of the minor's genitalia as well.

g.    During some conversations, STULL disclosed personal information about himself and admitted to sexually abusing/exploiting children as young as 9 years old.  In one conversation, identified by Discord as conversation "1218592683623186462," STULL used STULL DISCORD ACCOUNT 1 to send the following messages to a 15-year-old female he was communicating with: "Ive took 4 hymens with my hard cock" and "Youngest was 9."

2.    <u>STULL Distributed Child Pornography on October 20, 2023</u>

70.    Another conversation identified by Discord as conversation "1165009584591740980," occurred on October 20, 2023, when STULL utilized STULL DISCORD ACCOUNT 2.    STULL engaged in a sexual conversation with a female minor whose exact age is unknown.

71.    During the conversation, the two discussed a sexual encounter that occurred when the child was 9 years old, and her brother was 16 years old.    The child described how her brother penetrated her vagina with his penis and ejaculated on her face. The child subsequently asked STULL to "Send me incest vids or girls my age."

72.    In response, STULL sent numerous media files depicting minors appearing to be between the ages of 9- and 13-years old masturbating or being sexually abused by adult males.    Four of the media files STULL sent to the minor were subsequently identified by NCMEC as depicting identified child victims, and two of the videos depicting identified child victims are described below.

      a.    ***The video file titled "1697535091353.mov" is approximately 10 seconds in length and depicts an adult performing oral sex on a toddler or infant.    The child is nude from the waist down and the camera is closely focused on the child's genitalia and the person performing oral sex.***

      b.    ***The video file titled "1697819186053.mov" is approximately 50 seconds in length and depicts an adult male***

*anally or vaginally penetrating a nude toddler or infant.  The*
*child is nude and lying face down on a blanket.  A male adult is*
*forcing his erect penis between the child's buttocks appearing*
*to penetrate the child anally or vaginally.*

73. After receiving the above videos from STULL, she sent
a message asking STULL to send more.  In response, STULL sent
two media files titled, one media file ending in "662.mov," and
one titled "IMG_1553.jpg."

a.  The file ending in "662.mov" is a video file that
is approximately one minute long and depicts a female child,
appearing to be under the age of 12 years old, being vaginally
penetrated by a male adult's penis.  The child is nude but has a
black pentagram, appearing to be made from leather-like
material, draped across her stomach.

b.  The second file, titled "IMG_1553.jpg" is
visually identical to the photo titled "IMG_1553.png" that STULL
submitted to Citizenship and Immigration Services when
submitting the I-130 application for his wife ADM.  More
specifically, the photo depicts "page 4" of the I-130
application that is filled out by hand, presumable by STULL, and
contains STULL's name and address.

K.  **STULL's Post-Miranda Admissions**

74. On December 10, 2024, a ruse was used to have STULL
appear at the HSI office in San Bernardino, California.  STULL
was given his <u>Miranda</u> warnings and agreed to talk to the HSI
agents.  STULL provided the following admissions:

      a.    The STULL EMAIL ACCOUNT 1 and STULL EMAIL ACCOUNT 2 are email accounts belonging to STULL.

      b.    STULL has viewed child pornography depicting children as young as 6 months old.

75.    STULL has downloaded and saved child pornography images and videos to his iPad, some of which he subsequently shared with others online.

76.    STULL views child pornography for the purpose of self-gratification and masturbation purposes and prefers material depicting prepubescent children.

77.    STULL engaged in communications online where he disclosed having sexually abused minors in past, however, STULL described the disclosures as "fantasy" and that he has never touched a child sexually or inappropriately.

78.    STULL recognized the name of TRAFFICKER #1 and recalled sending her money for the Skype "shows" depicting Minor Victim 1.  STULL stated that he did not have any independent recollection of what Minor Victim 1 looked like due to the extensive amount of child pornography he has viewed in the past.

79.    STULL knows that possessing child pornography is illegal and described it as morally wrong.  STULL said that on multiple occasions in the past he has deleted the child pornography material from his device/s in an attempt to quit viewing it.  However, typically over the weekends, when he isn't busy, STULL said he finds himself going back to viewing child pornography.

80.  On December 10, 2024, after the conclusion of the interview of STULL, HSI agents executed a federal search warrant authorized in Case No. 5:24-MJ-00504 on STULL's person.  The search resulted in the seizure of an Apple iPhone 14 Pro Max with IMEI 350321532517766, which device was identified by Verizon Wireless as the device assigned to the 9053 PHONE NUMBER.

81.  I conducted a preview of the iPhone 14 Pro Max and found one child pornography video within the "Recently Deleted" folder of the "Photos" application.  The video is approximately 1 minute in length and depicts a prepubescent female, appearing to be under the age of 12 years old, masturbating and urinating in front of the camera.  The child is nude from the waist down and sitting on the ground outside in front of a camera that is also on the ground.  The child has her legs spread apart and is exposing her vagina and anus to the camera.  The child uses her hands to touch and further expose her vagina to the camera and near the end of the video is seen urinating.  The video has a date of November 15, 2024, 7:56 AM.  When confronted with the discovery of this video on STULL's iPhone 14 Pro Max, STULL stated he forgot that it was on his phone.

///

## VII. **CONCLUSION**

82.  For all the reasons described above, there is probable cause to believe that STULL has committed a violation of the SUBJECT OFFENSE, namely, Title 18, United States Code, Section 2252A(a)(2)(A), (b)(1).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  11th  day of December 2024.

_____
UNITED STATES MAGISTRATE JUDGE